[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR COUNSEL FEES
After a jury trial in which the plaintiff obtained a judgment totalling $6,169.00, the plaintiff filed a motion for counsel fees in excess of $243,000.00.
This motion was filed consistent with agreement of the CT Page 7856 parties made prior to trial to the effect that since the plaintiff's claim for punitive damages, in the form of counsel fees, was based on a count alleging a CUTPA violation, that issue would be submitted to the court if the plaintiff prevailed on the CUTPA count, Count Ten.
This procedure was dictated by the Supreme Court decision in Gill v. Petrazzuoli Bros., Inc., 10 Conn. App. 22 (1987), which holds that the issue of attorney's fees under CUTPA is for the Court and not the jury.
On May 14, 1993, a hearing was held on the motion, and the court accepted memoranda of law, reserving decision. In the course of its research into the question, the Court became concerned as to whether the CUTPA count was applicable to this case, a dispute between an employer and its employee.
This Court therefore arranged for a meeting with counsel so that they could be advised of the Court's concerns and given an opportunity to respond. Prior to that meeting, the defendant Larsen had filed, on June 10, 1993, a motion for permission to file supplemental memorandum. This motion was inspired by the June 8, 1993 decision in Jackson v. Whipple, Inc., 225 Conn. 705.
On June 22, 1993, the Court granted the defendant's motion and acceded to the suggestion of counsel for both parties, ordering memoranda on or before July 6, 1993 and any reply memorandum one week later.
In the course of discussion with counsel, the Court learned that notice of decisions rendered on May 14 by the Court had not been mailed to counsel. One of these decisions denied the defendant's motion to set aside the jury verdict in favor of the plaintiff on Count Ten, the CUTPA count, which is the subject of the punitive damages dispute.
This decision was being re-considered by the Court as a result of its research and was the reason for the calling of the meeting with counsel on June 22, 1993.
In granting the defendant's motion to file supplemental memorandum, scheduling memoranda and hearing the parties on July 13, the Court reconsidered the May 14 decision.
I. CT Page 7857
While the Jackson decision was the impetus for the defendant's motion to file a supplemental memorandum, there is other recent appellate authority which supports the defendant's position that CUTPA is not applicable to this case, a dispute between an employer and its employee.
The defendant argues that the plaintiff neither pleaded nor proved a CUTPA claim in that the parties were not engaged "in the conduct of any trade or commerce." (42-110b(a)) The CUTPA definition of "trade" or "commerce" is "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value in this state." (42-110a(4))
Addressing a dispute between an employer and an employee in Quimby v. Kimberly Clark Corporation, our Appellate Court stated:
 The plaintiff does not allege that the defendant committed these acts "in the conduct of any trade or commerce." The terms trade and commerce are defined in General Statutes 42-110a(4) as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value in this state." The relationship in this case is not between a consumer and a commercial vendor, but rather between an employer and an employee. There is no allegation in the complaint that the defendant advertised, sold, leased or distributed any services or property to the plaintiff. The United States District Court in Banerjee v. Robert, 641 F. Sup. 1093 (D.Conn. 1986), held that the employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA.[6] The Banerjee court noted that "[a]lthough an CT Page 7858 employer may engage employees for the purpose of promoting trade or commerce, the actual employment relationship is not itself trade or commerce for the purpose of CUTPA." Id., 1108, citing Manning v. Zuckerman, 388 Mass. 8, 13, 444 N.E.2d 1262 (1983) (construing similar Massachusetts statute); see also Collins v. Gulf Oil Corporation,605 F. Sup. 1519, 1523 (D.Conn. 1985).
The Court's reference to the United States District Court case is significant in a CUTPA case. Our CUTPA legislation was closely patterned after the federal legislation which had been in effect for many years and frequently interpreted by the federal courts.
In its recent Jackson decision, our Supreme Court concluded that:
 . . . a claimant under CUTPA must possess at least some type of consumer relationship with the party who allegedly caused harm to him or to her. CUTPA was, after all, enacted by the legislature to "put Connecticut in the forefront of state consumer protection. . . ." 16 H.R. Proc., Pt. 14, 1973 Sess., p. 7324, remarks of Representative Howard A. Newman.
Nowhere in the pleadings has the plaintiff in this case alleged a consumer relationship between itself and the defendant. In fact, the pleadings and the evidence repeatedly describe an employer-employee relationship. Finally, there is no allegation in the complaint which describes the defendant's behavior as CT Page 7859 CUTPA violations committed "in the conduct of any trade or commerce."
It is therefore the conclusion of the Court that upon reconsideration and consistent with these court decisions, the jury verdict on the Tenth Count sounding in CUTPA should not stand. It is set aside and judgment may enter on that count in favor of the defendant. The plaintiff's motion for punitive damages based on this count is denied.
 II.
The plaintiff has also urged that even if the CUTPA issue is decided in favor of the defendant, the Court should award common law punitive damages.
However, the allowance for exemplary damages is within the discretion of the trier. Vogel v. Sylvester, 148 Conn. 666, 673
(1961). This case was tried to the jury and the plaintiff, before trial, stated its claim for punitive damages was limited to the CUTPA claim in Count Ten. No claim for common law punitive damages was presented to the jury, and no such request to charge was submitted to the Court.
The claim never having been presented to the trier — the jury — it cannot now be submitted to the Court post-judgment.
The plaintiff also argues that since the jury found malice in the defendant's actions under the First Count in response to an interrogatory, the common law punitive damages claim is before the Court.
This argument is deficient in two respects. The Court set aside the jury verdict in favor of the plaintiff on the First Count. (This was one of the decisions of the Court made on May 14, 1993 and of which no notice to counsel was sent.)
Further, the only mention in the complaint of common law punitive damages is found in the prayer for relief where the plaintiff lists: "Exemplary damages." So, the plaintiff never pleaded the necessary allegations to support such a claim.
 "To furnish a basis for recovery of such damages, the pleadings must allege and the evidence must show wanton or CT Page 7860 willful malicious misconduct, and the language contained in the pleadings must be sufficiently explicit to inform the court and opposing counsel that such damages are being sought."
Markey v. Santangelo, 195 Conn. 76, 77 (1985), citing Manning v. Michael, 188 Conn. 607, 619 (182).
The plaintiff not having pleaded this item, then having stated that its punitive damages claim would be based solely on CUTPA, and finally, having not submitted this claim to the jury, it would be grossly inequitable for the court to now insert this claim post-judgment. Finally, the Court does not feel it has jurisdiction to grant this relief in this fashion.
The motion is denied insofar as it requests the Court to award common law punitive or exemplary damages.
Anthony V. DeMayo, Judge